**BRIGGS & STRATTON CORP., Plaintiff,**

v.

**KOHLER CO., Defendant.**

**No. 05–C–0025–C.**

United States District Court,
W.D. Wisconsin.

Jan. 5, 2006.

---

David L. Debruin, Milwaukee, WI, for Plaintiff.

David J. Harth, Heller Ehrman White & McAuliffe, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action in which plaintiff Briggs & Stratton Corp. accuses defendant Kohler Co. of manufacturing and selling a single-cylinder internal combustion engine that infringes plaintiff's United States Pat-

ent No. 6,382,166 (the '166 patent) and United States Patent No. 6,460,502 (the '502 patent). Defendant has asserted six counterclaims, alleging non-infringement, invalidity and violations of the Sherman Act, Wisconsin antitrust laws and the Wisconsin common law of unfair competition.

On November 3, 2005, the court issued a summary judgment order in which it construed the term "rail" as used in the '166 patent to mean "a bar that serves to direct substantially the motion of a component along the axis of the rail." Order dated Nov. 3, 2005, dkt. # 110, at 104. Subsequently, both parties filed motions for reconsideration, from which it became apparent that the court's construction of the term "rail" was too broad, encompassing not only rails, but also structurally distinct features such as the pins found in the Kollock, Shirai and Murata patents. Therefore, on November 25, 2005, at what was scheduled to be the final pretrial conference in this case, I withdrew the construction of the term "rail" and heard argument from the parties regarding what construction would most accurately reflect the meaning of the term as it is used in the '166 patent. Also, I vacated the portion of the November 3 order finding that defendant had infringed the '166 patent and set supplemental briefing on the proper construction of the term rail. I reserved the right to reinstate the original summary judgment findings at a later stage in the proceedings.

Now before the court are the parties' supplemental briefs on the construction of the term rail and plaintiff's "Motion to Reinstate Summary Judgment of Infringement of the '166 Patent and that the Claims of the '166 Patent Are Not Antici-

pated."[1] After reviewing each of the constructions proposed by the parties at summary judgment and thereafter, and having considered the points raised at oral argument and in the supplemental briefs, I conclude that the term rail should be construed to mean "a bar supported along its length that serves to direct substantially the motion of a component that slides along the axis of the rail." Plaintiff's motion for reinstatement of summary judgment of infringement will be denied because the parties dispute whether the ribs of defendant's engine "direct substantially" the movement of the engine's counterbalance weight along the axis of the ribs. However, because none of the prior art upon which defendant relies anticipates the '166 patent, I will grant plaintiff's motion for summary judgment of non-anticipation of the '166 patent.

### A. Defendant's Motion to Reconsider Revised Claim Construction

When construing a claim term, the court must not limit or broaden the claims, but rather must define, as a matter of law, the invention that has been patented. *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed.Cir.2001). The court must be careful not to restrict the scope of a patent by importing limitations not contained in the patent claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed.Cir. 2005). At the same time, the court must not permit a claim term to be read in a way that enlarges the patent beyond the scope of the invention itself. *Netword, LLC*, 242 F.3d at 1352. Simple though it may sound, striking a balance between an overly restrictive and an overly broad construction can be as treacherous as navigat-

---

1. In addition, plaintiff has moved for leave to file a reply in support of its motion to reinstate summary judgment. This motion will be granted; I have considered the arguments raised in the reply brief in addressing plaintiff's motion for reinstatement of summary judgment.

ing between Scylla and Charybdis, as this case has demonstrated.

■ As a remedy for the overly broad construction adopted in the November 3 summary judgment order, the parties have proposed several alternative constructions which they contend capture more closely the meaning of the term "rail" as it would be understood by those skilled in the art of mechanical engineering. Plaintiff has proposed two definitions:

1. A bar that serves to direct substantially the planar motion of a component that slides along the axis of the rail. Plt.'s Br. in Resp. to Dft.'s M. for Reconsideration, dkt. # 165, at 2.

2. A bar supported along its length that serves to direct substantially the motion of a component that slides along the axis of the rail. *Id.*

Defendant offers a third alternative:

A bar that is interconnected to a component that supports the rail along its length, and which fits into the recess or slot of an interfacing component and acts to direct the linear motion of either component along the axis of the bar. Def.'s Supp. Br. on Claim Constr., dkt. # 203, at 8.

At the November 25, 2005 hearing, I heard oral argument concerning plaintiff's proposed definitions. At the time, I indicated a preference for plaintiff's first proposal because it resembled more closely the construction adopted on summary judgment. However, having heard the parties arguments and having studied the briefs, I conclude that adopting the "planar motion" description would create more problems than it would solve, given the parties' starkly different interpretations of the meaning of "planar." Therefore, I will

focus on plaintiff's second proposed construction and defendant's alternative construction, neither of which contains the phrase "planar motion."

From the parties' proposed definitions, it appears that they agree upon several key elements of the term "rail" as it is used in the '166 patent. First, a rail is a bar supported along its length.[2] Second, a rail directs substantially the motion of another component along the rail's axis. Plaintiff would add the requirement that the moving component "slide" along the axis of the bar, while defendant would add that (1) the rail directs the linear motion of the moving component and (2) the rail and moving component are interconnected by means of a slot or recess.

Plaintiff suggests that a rail directs the motion of a component by permitting it to slide along the rail's axis. I understand "sliding" to mean movement along the length of the rail during which the moving component contacts the rail to some extent as it moves. I do not understand "sliding" to require perfect or constant contact with the surface of the rail. Although defendant has not included the word "slide" in its proposed construction, it does not dispute that a rail directs the motion of a component that slides along the rail's axis. Because this description is not a limitation, but rather a characterization of how one skilled in the art would understand a rail to function, it is a reasonable addition to the claim construction.

Defendant proposes that a rail directs the linear motion of the moving component. This limitation is a transparent attempt to re-litigate the question of linear motion addressed at length in the November 3, 2005 summary judgment order. As

---

2. At the November 25, 2005 hearing, defendant objected to plaintiff's suggestion that a rail was supported along its length. Hearing Transcript, dkt. # 199, at 10:6–17. However, because defendant proposes in its most recent filing a definition that requires a rail to be supported along its length, Def.'s Supp. Br. on Claim Constr., dkt. # 203, at 8, I will assume that defendant concedes the point.

I stated in that order, the '166 patent does not require a counterbalance weight to move in a straight line, but only "in a linear manner." Order dated Nov. 3, 2005, dkt. # 110, at 71–72. It follows that a rail need not direct purely linear motion. Defendant's attempt to import this limitation is unavailing.

Defendant's second suggested addition to the construction of rail merits greater attention. Defendant contends that a rail must be interconnected to the moving component whose motion it directs by means of a slot or recess. In support of this contention, defendant focuses on Figures 4 and 9 of the '166 patent, which show two embodiments of the patent's rails and guides. The figure below (Figure 4 of the '166 patent), shows a rail (34) interconnected with a counterbalance weight (26) by means of a slot (32).

Two guides (40 and 42) support the weight but do not direct the weight's motion along their axes. Similarly, the figure shown below (Figure 9 of the '166 patent) shows a rail (50) interconnected with a counterbalance weight (46) by means of a slot (58).

Two guides (54 and 56) support the weight but do not direct the weight's motion along their axes.

Defendant asserts that the distinguishing difference between a rail and a guide is that a rail connects to the counterbalance weight by means of a slot or recess. Without such an interconnection, defendant contends, there is no meaningful difference between rails and guides. Although it is true that the "single rail" embodiments shown in Figures 4 and 9 of the '166 patent feature a slot or recess that guides the motion of the counterbalance weight along the axis of the rail, other embodiments do not necessitate such an interconnection. The patent envisions "multiple rail" embodiments in which the need for a slot or recess becomes optional. The patent specification states:

> The invention also includes at least one rail interconnected with the crankcase housing such that the counterbalance weight is slidable along the rail. One or two additional rails may be provided. Recesses or slots *may* be provided in

the counterbalance weight that receive one or more rails.

'166 patent, col. 1, lns. 55–59 (emphasis added). Simply put, the patent does not mandate interconnection of a rail with the counterbalance weight by means of a slot or recess.

As defendant asserts, the difference between a guide and a rail cannot be found in the shape of the object itself. Neither can it be found in an "interconnection" between a rail and the component whose motion it directs. Rather, the difference between guides and rails is purely functional. A rail directs substantially the motion of a component along its axis. A guide does not direct motion along its axis. As long as a bar (or combination of bars) directs the motion of a component along its axis, the bar need not interconnect with the moving component in order to constitute a rail.

For the foregoing reasons, I find that plaintiff's second proposed definition best captures the meaning of the term rail as it is used in the '166 patent and as it would be understood by those skilled in the relevant art. Therefore, I will construe a "rail" to be a bar supported along its length that serves to direct substantially the motion of a component that slides along the axis of the bar.

B. *Plaintiff's "Motion to Reinstate Summary Judgment of Infringement of the '166 Patent and that the Claims of the '166 Patent Are Not Anticipated"*

In its motion, plaintiff requests two rulings: (1) a reinstatement of summary judgment of infringement of the '166 patent and (2) summary judgment of nonanticipation of the '166 patent. As a preliminary matter, I note that the November 3 summary judgment order remains in place with respect to the construction of all claim terms found in the '166 and '502 patents, with the sole exception of the term "rail." In addition, the order stands

with respect to the analysis of the '502 patent and to all aspects of the '166 patent except the discussion whether the Courage engine possesses rails and whether the '166 patent is anticipated by prior art. Those matters are discussed below.

1. *Infringement*

In the November 3 summary judgment order, I found that defendant's Courage engine possessed three rails: two "ribs" and one "guide shoe." In light of the new claim construction, each of these findings must be re-examined.

a. Guide shoe

█ Under the court's former construction, the guide shoe found in defendant's engine was a "moving rail," directing the motion of the attached counterbalance weight substantially along the axis of the guide shoe as the guide shoe and weight waggled back and forth in response to the reciprocation of the piston. It is undisputed that when the Courage engine operates, the guide shoe waggles back and forth in response to the reciprocation of the piston. Because it does not remain still, the guide shoe is not supported along its length as it moves back and forth between the ribs. Therefore, the guide shoe does not constitute a rail.

b. Ribs

█ The ribs on the Courage engine are bars supported along their length by the crankcase housing from which they are formed. When the engine operates, the guide shoe slides back and forth along the axis of the ribs. As it slides, the guide shoe and attached counterbalance weight waggle from side to side, varying somewhat beyond the axes of the ribs. Plaintiff contends that this variation is insubstantial. Not surprisingly, defendant disagrees. Whether the ribs "direct substan-

tially" the movement of the waggling guide shoe along their axis and therefore constitute rails is a matter for the jury to resolve at trial. If the ribs are rails, the '166 patent will be infringed because the court has found as a matter of law that the Courage engine meets every other limitation found in independent claim 1 of the '166 patent. If, however, the ribs do not direct substantially the motion of guide shoe along the axis of the ribs, there will be no infringement. Because this material fact remains in dispute, plaintiff's motion for reinstatement of summary judgment of infringement will be denied.

### 2. *Non-anticipation*

Plaintiff has asked the court to enter summary judgment in its favor with respect to defendant's counterclaim of anticipation because none of the prior art upon which plaintiff relies anticipates the '166 patent. In its summary judgment brief, defendant contended that the '166 patent was anticipated by the Austin, Ogura, Fiala, Van Ligten, Ricardo and Menen patents. Following the court's summary judgment order, defendant conceded that, in light of the court's construction of the term "counterbalance weight," the Austin, Menen, Ricardo and Van Ligten patents did not anticipate the '166 patent. However, defendant continues to assert that the Ogura and Fiala patents are anticipatory. In addition, defendant contends that under the court's original construction of "rail," three "pin patents" (the Murata, Shirai and Kollock patents) anticipate the '166 patent. In light of the changed construction of the term rail, I will revisit the question of anticipation.

■ A claim is anticipated only if each and every limitation is found either expressly or inherently in a single prior art reference. *Celeritas Techs., Ltd., v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir.1998). The Murata, Shirai and Kollock

patents do not anticipate the '166 patent because they do not contain rails. As discussed above, rails must be supported along their length. If a pin is surrounded entirely by the reciprocating counterbalance weight, it is not supported along its length, as defendant concedes. Def.'s Supp. Br., dkt. # 203, at 3–4. Therefore, the Murata, Shirai and Kollock patent do not anticipate the '166 patent.

That leaves only the Ogura and Fiala patents for consideration. Both patents use "kinematic drawings" to express the function of their claimed inventions. Defendant contends that if a person skilled in the art looked at these patents, he would understand that the patented invention encompasses "every possible means of directing the [motion of the] counterbalance weight, including the use of rails." Def.'s Br. in Opp. to Plt.'s M. to Reinstate Summ. J., dkt. # 215, at 15. Although defendant concedes that the Ogura and Fiala patents could be replicated using means other than rails, it argues that the patents nonetheless inherently anticipate the '166 patent because they can be replicated in a form that contains every limitation found in claim 1 of the '166 patent.

■ Prior art may anticipate without disclosing a feature of a claimed invention if that missing feature is *necessarily present*, or inherent, in the single anticipating reference. *Novo Nordisk Pharmaceuticals, Inc. v. Bio–Technology General Corp.*, 424 F.3d 1347, 1355 (Fed.Cir.2005) (emphasis added); *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1337 (Fed.Cir.2005); *Schering Corp. v. Geneva Pharmaceuticals*, 339 F.3d 1373, 1377 (Fed.Cir.2003). The parties agree that the Ogura and Fiala patents can be embodied without the use of rails. As a result, rails are not "necessarily present" in either patent and cannot be considered inherent features. Without such inherency, the Ogura

and Fiala patents fail to anticipate the '166 patent.

 Because none of the prior art upon which it relies contains each limitation of the '166 patent, defendant cannot show that the '166 patent was anticipated. Therefore, plaintiff's motion for summary judgment will be granted with respect to non-anticipation of the '166 patent.

## ORDER

IT IS ORDERED that

1. Plaintiff's motion for construction of the claim term "rail" is GRANTED. The term "rail" as found in claim 1 of plaintiff's U.S. Patent No. 6,382,166 is construed to mean "a bar supported along its length that serves to direct substantially the motion of a component that slides along the axis of the bar."

2. Plaintiff's "motion to for leave to file a reply" in support of its "motion to reinstate summary judgment of infringement of the '166 patent and that the claims of the '166 patent are not anticipated" is GRANTED.

3. Plaintiff's "motion to reinstate summary judgment of infringement of the '166 patent and that the claims of the '166 patent are not anticipated" is DENIED with respect to infringement and GRANTED with respect to non-anticipation.