DYK, Circuit Judge,
concurring-in-part, dissenting-in-part.
I respectfully dissent from the majority’s claim construction of the term “is connected to the computer network”. to require absolute currency in a real-time assessment of connectivity. The majority’s insistence that “is” requires absolute currency fails to take account of a common usage of the term “is” and our prior decision in Paragon Solutions, LLC v. Timex Corp., holding that a reference to “real-time” does not necessarily require absolute currency. 566 F.3d 1075, 1088 (Fed.Cir.2009). More importantly, the majority fails to give sufficient weight to the specification which Phillips v. AWH Corp. holds “is always highly relevant to the claim construction analysis” and is “the single best guide to the meaning of a disputed term.” 415 F.3d 1303, 1315 (Fed.Cir.2005) (en banc) (internal quotations and citations omitted) (emphasis added).[1]
I
The patent here claims a system, an apparatus, and associated methods to facilitate real time communication between two users over the internet. When a user logs onto the internet, he is assigned a dynamic IP address (akin to a phone number for a computer). Because this IP address may be different every time the user logs on, direct communication is nearly impossible, just as making a phone call to someone would be if phone numbers changed on every call. The present invention purportedly solves this problem by maintaining a database of IP addresses in a central server. As the specification describes, when a user logs onto the network, his computer sends a current IP address and an email address to a central server. '704 patent, col. 5, lines 25-29. When another user wishes to initiate real-time communication with the first user (for example, a video telephone call), his computer will query the server with the first user’s email address. Id. at col. 5, lines 55-60. If the database indicates that the first user is online, the server will send the second user the IP address of the first user, enabling the second user to initiate direct real-time communication with the first user. Id. at col. 5, lines 60-64. All parties agree that discovering whether a user “is connected to the network” involves a check of the server’s database.
II
The present claim construction dispute arises in the context of an inter partes review in which the Patent Trial and Appeal Board (“the Board”) found the claims of the patent anticipated and/or obvious over two pieces of prior art that disclosed similar server-based databases of IP addresses. The patentee contends that these prior art disclosures do not read on the patent claims because the claims here require a real-time check, which is not disclosed by the prior art. Relying on the *1365 specification, which indicates that the database only need be “relatively current,” '704 patent, col. 5, lines 39-42, the Board rejected this construction. On appeal, the entire anticipation/obviousness question now depends on the construction of the term “is connected to the network.”
The majority rejects the Board’s specification-based construction, holding that the word “is” necessarily denotes currency and cannot accommodate a situation in which information is even slightly out of date. The majority states that “the present tense ‘is’ in ‘is connected to the computer network’ plainly says that the query transmitted to the server seeks to determine whether the second unit is connected at that time, ie., connected at the time that the query is sent.” Maj. Op. at 1360. “When claim language has as plain a meaning on an issue as the language [in this claim] does, ... [t]he specification plays a more limited role than in the common situation where claim terms are uncertain in meaning in relevant respects.” Id. at 1361. The majority then concludes that “the specification does not provide a basis for reasonably adopting a construction that contradicts the plain meaning of the claim language.” Id. at 1361. According to the majority, the Board’s construction was erroneous because it “did not address the facially clear meaning, instead turning immediately to the specification.” Id. at 1360. In other words, the majority relies on the meaning it assigns to claim language based on its own knowledge of word usage rather than relying on the patentee’s own specification.
Ill
Contrary to the majority’s assertion, ordinary usage easily accommodates the Board’s interpretation of “is connected.” If a person says that “John is at home,” this might lead to the question: “How do you know?” The response “I spoke to him five minutes ago” would not be viewed as contradicting the original statement, even though John might have left home in the intervening five minutes. In other words, the use of the word “is” does not necessarily imply absolute accuracy or absolute currency.
In any event, under the Phillips approach, we must look to the specification as the “single best guide to the meaning of a disputed term.” Phillips, 415 F.3d at 1315. This is true, contrary to the majority’s assertion, even in cases where language, on its face, appears to have a plain meaning, because, as Phillips states, the specification “is always highly relevant to the claim construction analysis.” Id. (emphasis added). The only meaning that matters is the meaning in the context of the patent. See id. at 1316 (citing to and quoting Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1352 (Fed.Cir.2001) (“The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose.”))
In other cases, we have appropriately paid primary attention to the specification, including a case involving a nearly identical situation, Paragon Solutions, 566 F.3d at 1088. The majority’s insistence that “is” requires currency independent of the specification is directly contrary to this prior decision, which faithfully followed Phillips. We held that “displaying real-time data” “cannot mean instantaneous” based on a reading of the claim language in the context of the specification. Paragon Solutions, 566 F.3d at 1088. This case involved an exercise monitoring system (which can be worn on the wrist) that displays data to the user from both an “electronic positioning device” and from a “physiological monitor.” Id. at 1083. Despite seemingly similar clarity in the lan *1366 guage of the claim — “a display unit configured for displaying real-time data” — we recognized that claim language cannot be read in isolation and looked to the specification in determining the ordinary meaning of the claim language. Id. at 1088. Because the claim required data that, according to the specification, took time to develop, we rejected the district court’s technical dictionary-based construction and held that “real-time” did not mean “instantaneous.” See id. at 1092. The majority’s conclusion that “is” necessarily requires currency here contravenes the holding of Paragon Solutions.
The majority’s construction of the term is also contrary to the specification in this case. The specification is clear that “is connected” does not require a real-time check. The specification — the “single best guide to the meaning of a disputed term,” see Phillips, 415 F.3d at 1315-describes that, when a query is received, the server “searches the database ... to determine whether the callee is logged-in by finding any stored information corresponding” to that queried user. '704 patent, col. 5, lines 57-59 (emphasis added). This information in the database, as described by the specification, is kept “relatively current.” Id. at col. 5, lines 39-42. Checking historical “relatively current” information in a database is not a “real time” determination.
The majority’s construction is not only inconsistent with the general description of the invention, it is also inconsistent with the described embodiments. At oral argument, the patentee conceded that its construction, now adopted by the majority, would require the database to be always accurate.[2] In the preferred embodiment, a database record is created when a user logs on to the network. '704 patent, col. 5, lines 25-29. Everyone agrees that checking whether a user “is connected to the network” involves checking that database record. But this embodiment includes mechanisms to detect if a user is no longer on-line that do not guarantee the accuracy of that record. For example, the server will periodically (e.g., every 2 hours) update the database, looking to see whether a record has been updated during that time period. Id. at lines 39^0. If the record is too old, the server will change the database record to indicate that the user is no longer online. See id. This check can be out of date because of the time between periodic checks. The embodiment also describes that when a user logs off, that user’s computer can send a log-off message to the server, which will then update the database record to indicate that that particular user is not online. Id. at col. 6, lines 6-16. As the Board found, even this method will not prevent a non-current response to a query to the database when, for example, the first user’s computer crashes or otherwise fails to send a log-off message to the server. Thus, as the patent itself recognizes, the information in the database will only be “relatively current,” and there is no disclosure in the specification that would warrant construing “is connected” to require absolute accuracy.
I respectfully dissent.

. The Board applied the broadest reasonable interpretation standard ("BRI") rather than Phillips. Normally, BRI applies in inter partes review, see In re Cuozzo Speed Techs., LLC, 793 F.3d 1268, 1279 (Fed.Cir.2015), but given that the patent expired on September 25, 2015, during the pendency of this appeal, the patentee contends that the Phillips standard should apply. The majority does not decide this issue because it contends that even under BRI, the Board's construction was incorrect. In my view, the majority's construction is incorrect even under Phillips, and, like the majority, I see no significant difference between the Phillips and BRI standards as applied here.

. At oral argument, the patentee was asked whether its "view is that the database must always be accurate, and that’s the difference between [the patented invention] and the pri- or art, correct?” The patentee responded, "That is correct, your honor.” Oral Argument at 34:53.