NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DIGITAL ALLY, INC.,**
*Plaintiff-Appellant*

**v.**

**TASER INTERNATIONAL, INC.,**
*Defendant-Appellee*

---

2019-2065

---

Appeal from the United States District Court for the District of Kansas in No. 2:16-cv-02032-CM, United States District Judge Carlos Murguia.

---

Decided:  April 22, 2020

---

ADAM PRESCOTT SEITZ, Erise IP, P.A., Overland Park, KS, for plaintiff-appellant.  Also represented by PAUL R. HART, Greenwood Village, CO.

PAMELA BETH PETERSEN, Axon Enterprise, Inc., Scottsdale, AZ, for defendant-appellee.  Also represented by LAUREN ELIZABETH DOUVILLE, JOHN D. GARRETSON, Shook, Hardy & Bacon, LLP, Kansas City, MO.

---

Before LOURIE, MAYER, and WALLACH, *Circuit Judges.*

PER CURIAM.

Digital Ally, Inc. ("Digital") appeals the final judgment of the United States District Court for the District of Kansas granting summary judgment of non-infringement of U.S. Patent No. 9,253,452 (the "'452 patent"). *See Digital Ally, Inc. v. Taser Int'l, Inc.*, No. 2:16-cv-02032-CM (D. Kan. June 17, 2019), *amended by* No. 2:16-cv-02032-CM (D. Kan. July 25, 2019) ("*District Court Decision*"). We affirm.

## I. BACKGROUND

The '452 patent is directed to a system, designed for use by law enforcement officers, which uses multiple recording devices to record events. *See* '452 patent col. 1 ll. 7–16. Specifically, it describes "[a] multiple recording device management system including an intermediate multiple recording device managing apparatus, a vehicle recording device mounted in a police vehicle and synced to the managing apparatus, and a personal recording device carried by a police officer and wirelessly synced to the managing apparatus." '452 patent, Abstract. Independent claim 10 recites:

A system for recording multiple viewpoints of an event, comprising:

a first recording device configured to be mounted on or configured to be carried by a law enforcement officer so as to record a first set of record data for the event;

a second recording device, distinct from the first recording device, located so as to record a second set of record data for the event, said first set of record data being distinct from the second set of record [data]; and

a recording device manager operable to:

receive a trigger signal,

said trigger signal being at least one of activation of a law enforcement vehicle's siren, activation of said law enforcement vehicle's signal lights, activation of said law enforcement vehicle's spotlight, a vehicle crash event, and a vehicle speed, and

broadcast, in response to receiving the trigger signal, at least one communication signal including correlation data to the first recording device and the second recording device instructing the first recording device to begin recording said first set of record data and instructing the second recording device to begin recording said second set of record data,

wherein the first recording device stores the correlation data as metadata for the first set of record data and the second recording device stores the correlation data as metadata for the second set of record data, such that the first set of record data and the second set of record data can be correlated back to the event,

wherein the first set of record data and the second set of record data are recorded beginning substantially simultaneously in response to the broadcast communication signal.

*Id*. col. 16 ll. 21–53.

Digital brought an action against TASER International, Inc. ("TASER")[1] in the United States District Court for the District of Kansas, alleging that TASER's Axon Signal Units ("ASUs"), when used with certain cameras,

---

[1]    TASER changed its name to Axon Enterprise, Inc., effective April 5, 2017.

infringed claims 10, 14–16, and 20 of the '452 patent.[2]  On June 17, 2019, the district court granted TASER's motion for summary judgment of non-infringement, concluding that TASER's ASUs do not broadcast "correlation data" as required by independent claim 10.  *See District Court Decision*, slip op. at 6.  The court explained that the parties had agreed that the term "correlation data," as used in claim 10, was "data, including but not limited to [a] unique serial number and time stamp, used to link together or otherwise associate record data."  *Id.* at 5 (internal quotation marks omitted).  In the court's view, TASER's accused products do not broadcast "correlation data" because they are "not capable of being used to link together or otherwise associate [video or audio] data."  *Id.* at 6 (internal quotation marks omitted) (alteration in original).  The court rejected Digital's argument that TASER's ASUs are capable of broadcasting "correlation data" because they can link a video recording to an event, explaining that the asserted claims require "video-to-video" correlation rather than "video-to-event" correlation.  *Id.* at 6–7.

Digital then filed a timely appeal with this court.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012).

---

[2]    Digital also accused TASER of infringing U.S. Patent No. 8,781,292, but subsequently withdrew its allegations of infringement related to that patent.  *See Digital Ally, Inc. v. Taser Int'l, Inc.*, No. 16-2032-CM, 2018 WL 3472815, at *1 (D. Kan. July 19, 2018).  Digital also advanced unfair competition and antitrust claims against TASER; this court recently affirmed the district court's dismissal of those claims.  *See Digital Ally, Inc. v. Taser Int'l, Inc.*, 720 F. App'x 1023 (Fed. Cir. 2018).

## II. DISCUSSION

### A. Standard of Review

Claim construction based on the intrinsic evidence is a question of law that this court reviews de novo. *See, e.g.*, *Trustees of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016); *Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1265 (Fed. Cir. 2015). Where, as here, "the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1363 (Fed. Cir. 2019) (citation and internal quotation marks omitted).

### B. "Correlation Data"

Resolution of the infringement dispute presented here turns on the proper construction of a single claim term: "correlation data." The parties agree that independent claim 10 of the '452 patent requires a "recording device manager" that is capable of "broadcast[ing] . . . at least one communication signal including *correlation data* to [a] first recording device and [a] second recording device." '452 patent col. 16 ll. 30–40 (emphasis added). They also acknowledge that, during claim construction proceedings, they agreed that the term "correlation data," as used in claim 10, means "data, including but not limited to [a] unique serial number and time stamp, used to link together or otherwise associate record data." *District Court Decision*, slip op. at 5; *see* A. 311, 1616.

The parties vigorously dispute, however, whether the claimed "correlation data" refers to data which links "record data" to other "record data," i.e., which links one video to another video ("video-to-video correlation") or instead which links a video to a recorded event ("video-to-event

correlation").[3] TASER contends that both the language of claim 10, when read in its entirety, and the disclosure in the specification make clear that "correlation data" means data which links one video recording to another video recording. Digital, by contrast, argues that the district court misconstrued the parties' stipulated construction and that "correlation data" need not be capable of linking one video recording to another video recording. In other words, according to Digital, claim 10 only mandates video-to-event correlation.

There are at least three reasons why TASER has the better argument. First, the specification strongly supports the district court's conclusion that "correlation data" means data that links one video recording to another video recording. *See District Court Decision*, slip op. at 6–7. The specification explains that prior art recording device management systems were not able to "corroborate the recorded data by *correlating data taken from distinct devices*." '452 patent col. 1 ll. 27–28 (emphasis added). In other words, prior art systems were not able to provide effective video-to-video correlation.

The claimed invention purportedly overcomes this problem through a system in which a "recording device managing apparatus" sends "time stamps to synced recording devices for *corroborating recordings*" from the recording devices. *Id.* col. 1 l. 66–col. 2 l. 4 (emphasis added). Claim 10 tracks this approach, describing a "recording device manager" which "broadcast[s] . . . correlation data" to two "distinct" recording devices, referred to as a "first recording device" and a "second recording device." *Id.* col. 16 ll. 23–40. Over and over again, the specification describes a recording device manager which sends data, such as a

---

[3] The parties also agree that the term "record data" in claim 10 refers to the "audio and video for an event." A. 1609.

time stamp or a serial number, to "correlate" or "match" video recordings from different recording devices. *See, e.g.,* *id.* col. 6 ll. 45–51 ("[T]he unique serial number and time stamp allow [the] video recording software that manages the data recordings to *link together or otherwise associate data recordings* having the same serial number and time stamp. Because recorded data is captured by disparate devices, use of the unique serial number assists in *associating together the recorded data from each device.*" (emphases added)); *Id.* col. 6 ll. 51–57 (explaining that the data provided by the recording device manager to each of the recording devices allows a police officer to "*correlate and corroborate*" recordings from distinct recording devices (emphasis added)); *Id.* col. 7 ll. 15–21 ("The time stamp and serial number corresponding to the captured and recorded video and audio data recordings from the personal recording device can be *matched* with the concurrent time stamp corresponding to the captured and recorded video and audio data recordings from the vehicle recording device to *link the recordings* chronologically." (emphasis added) (diagram numbering omitted)). Thus, because the specification repeatedly states that the data broadcast from the recording device manager is used to correlate video recordings from two distinct recording devices, the term "correlation data" in claim 10 is most reasonably interpreted to refer to data linking a video recorded on one device to a video recorded on a different device. *See, e.g., Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.,* 674 F.3d 1365, 1372 (Fed. Cir. 2012) ("A patent is a fully integrated written instrument; the claims must be read in view of the specification, of which they are a part."); *Netword, LLC v. Centraal Corp.,* 242 F.3d 1347, 1352 (Fed. Cir. 2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose."); *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[The specification] is the single best guide to the meaning of a disputed term.").

Second, Digital's proposed construction of the term "correlation data" renders claim language superfluous. *See, e.g.*, *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to adopt a claim construction which would render a claim limitation meaningless); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (explaining that "claims are interpreted with an eye toward giving effect to all terms in the claim"). In Digital's view, the "correlation data" which is broadcast from the recording device manager to the recording devices, '452 patent col. 16 ll. 37–40, serves only to link a video recording to a recorded event. *See* Appellant Br. 9. But the penultimate clause of claim 10 specifically requires the video recordings to "be correlated back to the [recorded] event." '452 patent col. 16 l. 49. There would be no need for the penultimate clause to require correlation back to the recorded event if, as Digital asserts, the "correlation data" initially sent by the recording device manager to the recording devices had already linked the video recordings back to the recorded event.

Finally, there is no merit to Digital's assertion that the district court failed to properly consider or acknowledge its interpretation of the parties' stipulated construction of the term "correlation data." *See* Appellant Br. 6, 12. The district court expressly recognized Digital's position that the parties' stipulated claim construction required video-to-event correlation rather than video-to-video correlation. *See District Court Decision*, slip op. at 6. As the court correctly concluded, however, Digital's position "ignore[d]" the plain meaning of the stipulated construction. *Id.*

In this regard, the parties, as noted previously, stipulated that the term "correlation data" in claim 10 meant "data, including but not limited to [a] unique serial number and time stamp, used to *link together* or otherwise *associate record data.*" *Id.* at 5 (emphases added); *see* A. 311. Given that Digital acknowledges that the terms "record data" and "video" can be used "interchangeably," Appellant Br. 8 n.3,

the plain meaning of the agreed-upon construction is that "correlation data" is data that can be used to "link together" or "associate" video recordings, i.e., video-to-video correlation. We reject, therefore, Digital's unsupported assertion that the stipulated construction requires only that "correlation data" link a video recording with "something," but "does not identify what that something is." *Id.* at 20 (emphasis omitted).

## C. Infringement

"Because there is no dispute that the accused correlation data [in TASER's system] cannot be used to link together or otherwise associate video from separate accused cameras," *id.* at 5, the district court correctly granted TASER's motion for summary judgment of non-infringement. We have considered Digital's remaining arguments but do not find them persuasive.

## III. CONCLUSION

Accordingly, the judgment of the United States District Court for the District of Kansas is affirmed.

**AFFIRMED**